UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA MOYE

        Plaintiff,

        Case No.  1:15-CV-0930

v.

HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Angela Moye seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-nine years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.49, 84.) She graduated high school, attended three years of college, and was previously employed as a data processing clerk and waitress. (PageID.69–70, 79.) Plaintiff applied for benefits on March 27, 2012, alleging that she had been disabled since February 25, 2011, due to depression, anxiety, and arthritis. (PageID.84, 130–131.) Plaintiff's application was denied on July 5, 2012, after which time she requested a hearing before an ALJ. (PageID.96–100.) On August 7, 2013, Plaintiff appeared before ALJ James J. Kent for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.65–82.) At the hearing

Plaintiff was informed of her right to counsel, but she decided to proceed without one. (PageID.68.) In a written decision dated November 14, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.49–64.) Plaintiff subsequently obtained counsel and sought review before the Appeals Council. On July 31, 2015, however, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.29–32.) Plaintiff next initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

*See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Kent determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.54.) At step two, the ALJ determined Plaintiff had the severe impairment of affective disorder. (PageID.54–55.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.55–56.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b). She can [] lift up to 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours and sit for six hours in an eight hour workday. She can perform simple routine repetitive tasks on a regular basis, with occasional contact with the general public and coworkers.

(PageID.56.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.60.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following positions Plaintiff could perform: general office clerk (7,100 Michigan jobs and 230,000 national jobs), assembler (19,600 Michigan jobs and 445,000 national jobs), and packager (9,250 Michigan jobs

and 320,000 national jobs). (PageID.79–80.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.60–61.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from her alleged disability onset date through the date of decision. (PageID.61.)

## DISCUSSION

### 1. The ALJ Properly Developed the Record.

Plaintiff first argues that the ALJ failed to properly develop the record in this matter. (PageID.272–273.) At the administrative hearing, Plaintiff informed the ALJ that she had undergone additional treatment at Community Mental Health (CMH). (PageID.70–71.) In an August 13, 2013, letter to CMH, the Commissioner sought Plaintiff's records dating from February 1, 2013. (PageID.227.) On August 16, 2013, however, CMH responded that there were no treatment records on file. (PageID.226.) This turned out to be an incorrect statement. Indeed, as discussed more fully below, there were several therapy and physician review notes from CMH during this period. On September 26, 2013, the ALJ wrote to Plaintiff and stated that he had received additional evidence–evidence not from CMH–that he was making a part of the record at Exhibit 8F, and provided a copy of those records to Plaintiff. (PageID.179–180.) The ALJ subsequently rendered his decision. In it, the ALJ appeared to doubt the veracity of CMH's letter, as he noted that records from other sources referenced Plaintiff's treatment at CMH. (PageID.59.) Plaintiff argues that the ALJ failed in his duty to develop the record. (PageID.272–273.)

Plaintiff is correct that where a claimant is unrepresented, is incapable of "presenting an effective case," and is "unfamiliar with hearing procedures," the ALJ has "a special, heightened

5

duty to develop the record." *Nabours v. Comm'r of Soc. Sec.*, 2002 WL 31473794 at *3 (6th Cir., Nov. 4, 2002) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) and *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983). This heightened duty arises from the remedial nature of the Social Security Act, as well as the recognition that "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Lashley*, 708 F.2d at 1051 (citing *Richardson*, 402 U.S. at 411). To satisfy this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* at 1052 (citations omitted).

Because this assessment is not readily amenable to the application of bright line tests, whether the ALJ has satisfied this special duty is to be determined on a case-by-case basis. *See Osburn v. Apfel*, 182 F.3d 918, 1999 WL 503528, at *7 (6th Cir. 1999) (citation omitted). The absence of a bright line test does not mean, however, that the Court is without guidance when making this assessment. To the contrary, courts have articulated several concerns relevant to this determination.

First, reversal of the ALJ's decision is not warranted simply because an attorney would have better developed the record. Instead, "the key inquiry is whether the administrative law judge fully and fairly developed the record through a conscientious probing of all relevant facts." *Rowden v. Chater*, 1996 WL 294464 at *1 (6th Cir., June 3, 1996). Failure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a failure to obtain all available medical records and documentation. *See, e.g.*, *Lashley*, 708 F.2d at 1052 (where the claimant "was only superficially questioned concerning his

6

daily activities and his physical limitations," the ALJ failed to "fulfill his duty to develop fully the record").

It is difficult to understand, from Plaintiff's short, three-sentence paragraph, how Plaintiff specifically argues the ALJ failed in his duty. As Plaintiff herself states, the ALJ "was very good in requesting the CMH records" Plaintiff told her about. (PageID.272.) Any error here, as Plaintiff admits, was on the part of CMH by incorrectly stating that there were no records available. While it is unfortunate that the ALJ did not have access to these records, the Court sees no reason to assign CMH's error to the ALJ. Finally, as discussed below, the Court finds no reasonable possibility that these records, even if they had been considered by the ALJ, would have led the ALJ to arrive at a different conclusion. The Court finds no reversible error here.

At the end of her claim, Plaintiff tacks on an additional argument that the ALJ should have explicitly discussed the impact of her mental impairment on her knee pain, and that had he done so, he would have classified the knee-pain as a severe impairment at step two. (PageID.273.) Plaintiff repeats this claim in her second claim of error, as well as in her reply brief. (PageID.276, 405–406.) This claim, however, is not listed anywhere in Plaintiff's statement of errors. (PageID.268.) This should end the Court's analysis, because issues not presented in the Plaintiff's statement of errors are considered waived. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010); *York v. Astrue*, No. 3:12-cv-188, 2013 WL 796288, at *5 (S.D. Ohio Mar. 4, 2013); *Oudsema v. Comm'r of Soc. Sec.*, No. 1:11-cv-1264, 2013 WL 588925, at *5 (W.D. Mich. Feb. 13, 2013). But even if Plaintiff had not waived the claim, it would not be successful. At bottom, Plaintiff argues the ALJ should have classified her knee pain as a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and

proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error"). The ALJ thoroughly discussed why Plaintiff's knee pain did not amount to a severe impairment. (PageID.55.) He also discussed this impairment in his RFC discussion. He noted that Plaintiff's alleged arthritis beginning five years before the alleged onset date. She did not require surgery, and she does not need a cane to ambulate. (PageID.57.) It is clear the ALJ considered the entire record in rendering his decision, and accordingly Plaintiff points to no reversible error.

For all the above reasons, Plaintiff's first claim of error is denied.

**2.      The ALJ Properly Considered Plaintiff's Subjective Allegations.**

At the hearing, Plaintiff testified that she was impaired to a greater extent than that found by the ALJ. She stated she had difficulty walking and could not walk on surfaces such as a golf course. (PageID.75.) She would have to write herself notes in order to remember things. (PageID.76.) She experienced anxiety around small groups, and testified that were she to work, she would need to take about seven breaks in a normal workday. (PageID.77–78.) She thought she would miss work roughly two to three days a month, and testified that at her last position, every two to three months she felt like she would need to take a week off. (PageID.79.) The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely credible." (PageID.57.) Plaintiff claims the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his

examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Plaintiff raises three issues concerning the ALJ's credibility discussion. First, Plaintiff claims the ALJ misinterpreted her statements regarding her activities of daily living. (PageID.274.) Second, she claims the ALJ did not consider her ability to afford her medications. (PageID.274–275.) Finally, she claims the ALJ erred in failing to note her depression had increased in severity. (PageID.276.) The Court finds no error requiring reversal.

    *A.    Activities of Daily Living*

Regarding Plaintiff's activities of daily living, the ALJ noted that:

Either in oral testimony or various forms completed by the claimant and others, it was reported that the claimant gets her daughter ready for school, has no problem with personal care and hygiene, cooks meals for herself and her daughter, cleans the house, does laundry, drives a car, shops in stores for food and clothing, pays bills and manages banking accounts. She indicated she enjoys reading, walking, and movies "often." She reported she communicates with friends and family via computer email and texting on a daily basis. (3E). While none of these activities alone or in combination translates into the ability to work full time or perform substantial gainful activity, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

(PageID.58.) Plaintiff asserts that she is much more limited in her daily activities. She notes that she will sometimes stay in bed until her daughter returns from school. She receives help from family remembers in caring for her daughter. She needs frequent breaks while doing housework, and it takes her all day to complete such tasks. (PageID.157–158.) She no longer goes on walks, and cannot afford movies. She mostly communicates with others via computer. (PageID.160.)

An ALJ may consider a claimant's daily activities in his credibility determination. *See* 20 C.F.R. § 404.1529(c)(3). However the ALJ's decision must still be supported by substantial evidence. *See Walters*, 127 F.3d at 528 (stating that a reviewing court must affirm the ALJ's decision, unless the ALJ applied an incorrect legal standard or made findings of fact which are not supported by substantial evidence in the record). The Court finds the ALJ's decision here is supported by substantial evidence. Plaintiff's assertions notwithstanding, the fact remains that Plaintiff is able to care for her daughter. She has no problems handling her own personal care. Plaintiff can prepare meals, including those with several courses. (PageID.157–158.) She can go shopping and handle money. (PageID.159.) As the ALJ noted she socializes with others over the computer. (PageID.160.) On September 13, 2011, she reported having increased her walking to every other day. (PageID.202.) Accordingly, substantial evidence supports the ALJ's conclusion regarding Plaintiff's activities of daily living.

    B.  *Ability to Afford Medication*

On her function report, Plaintiff stated that she sometimes experienced bad months in which she became sick and depressed when she was unable to obtain her medication. (PageID.163.) The ALJ noted this statement, but found it unclear why she was unable to obtain medications when she received prescription assistance from Dr. Peter Cooke and had coverage

through Medicaid. (PageID.58.) Plaintiff supposes that "there could be good reasons" why Plaintiff was unable to obtain medication, apparently claiming that her statement fell during a period when she did not have Medicaid coverage and could not afford medication. (PageID.275.)

SSR 96–7p prohibits an ALJ from drawing inferences about a claimant's failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure, such as "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96–7p, 1996 WL 374186, at *8 (S.S.A. July 2, 1996). Here the ALJ noted that Plaintiff received assistance with her prescriptions from Dr. Cooke. (PageID.201). Accordingly his decision complies with SSR 96–7p's direction to consider a possible explanation for Plaintiff's failure to take her medication, and is furthermore supported by substantial evidence. Plaintiff's speculation on this point does nothing to demonstrate that the ALJ's decision is not supported by substantial evidence. She does not cite evidence, for example, that at the time Plaintiff completed her function report she was not covered by Medicaid. To the extent Plaintiff relies on evidence not considered by the ALJ, the Court cannot consider it here in the sentence four context. The Court can only consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Accordingly, the Court finds no error here.

        C.     *Severity of Plaintiff's Depression*

As part of his credibility discussion, the ALJ noted that Plaintiff reported suffering from depression since she was a teenager, and had been receiving treatment for the condition since the age of fifteen. (PageID.58.) The ALJ noted, however that since Plaintiff turned fifteen, she had "not only completed high school, but she also completed three years of college, including an

associate's degree. She also has a minimal but consistent work record going back to age 17, despite her allegations of debilitating depression." (PageID.58.) The ALJ thus found Plaintiff's schooling and work history to be inconsistent with the severity of her complaints. Plaintiff argues the ALJ erred because her symptoms had recently increased in severity due to her son's behavior. (PageID.276.)

It is true that Plaintiff reported her depression had been made worse due to recent interactions with her son. (PageID.161.) It appears her son attempted suicide in February 2012. It also appears Plaintiff's son physically assaulted her in September of 2011. (PageID.195, 202.) The ALJ explicitly discussed both records. (PageID.58.) None of the underlying records state that Plaintiff's depression had increased in severity, and Plaintiff cites to no other records, aside from her own report, stating as much. But even assuming they did, the ALJ noted that Plaintiff's allegations of disabling depression were undercut by, among other things, her statement on June 21, 2012, to the consultative examiner that she had not sought psychological treatment for her impairments in the last eighteen months after her therapist left the clinic she visited. (PageID.212.) The ALJ reasonably concluded that her failure to seek treatment was inconsistent with the severity of Plaintiff's complaints. (PageID.58.) Thus even after the dates in which Plaintiff alleged an increased severity in her symptoms, the ALJ found reasons to discredit the severity of her allegations.

For all the above reasons, the Court finds the ALJ's credibility determination to be supported by substantial evidence. Plaintiff's claim of error is denied.

### 3. The ALJ Properly Considered Plaintiff's GAF Score.

On June 25, 2013, Plaintiff was seen for a psychological evaluation by Dr. Robert Fabiano, PhD. (PageID.222–225.) Dr. Fabiano administered several tests, and summarized his

13

evaluation of Plaintiff by stating that she had "an entirely normal test profile across areas of intellectual, memory and academic achievement aptitudes. However, from a psychological standpoint, this patient shows high levels of depression and anxiety." (PageID.224.) Dr. Fabiano subsequently diagnosed Plaintiff with major depressive disorder, and assigned a GAF score of 45.[2] (PageID.225.) He also recommended Plaintiff receive vocational rehabilitation assistance from Michigan Rehabilitation Service. (PageID.226.) The ALJ found the low GAF score incompatible with the doctor's recommended referral for vocational rehabilitation assistance and gave the score only little weight. (PageID.59.) Plaintiff argues the ALJ erred because the Michigan Rehabilitation Service is available to those eligible for social security benefits. (PageID.275–276.)

A GAF score "may have little or no bearing on the subject's social and occupational functioning," *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006). That is because "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000)). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 F. App'x 761 (6th Cir. 2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (hereinafter DSM-IV). A score of 45 indicates that the individual is experiencing "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to hold a job)." *Id.* at 34.

*Id.* at 766. In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 F. App'x at 511.

The ALJ reasonably found that the low GAF score assigned by the doctor–one which includes in its definition an inability to keep a job–was inconsistent with the recommendation that Plaintiff also receive vocational assistance. While it might be true that those receiving social security benefits may be eligible for assistance from Michigan Rehabilitation Services, such does not resolve the inconsistency found by the ALJ. What is at issue here is Dr. Fabiano's opinion regarding the severity of Plaintiff's impairments (as reflected in the assigned GAF score) against his opinion that Plaintiff also receive vocational rehabilitation, not whether Plaintiff would be eligible for such a service. Accordingly, the ALJ did not err in giving the score only little weight.

### 4. Plaintiff Has Not Met Her Burden For A Sentence-Six Remand.

Plaintiff attached to her brief evidence that was not presented to the ALJ and also was not submitted to the Appeals Council. (PageID.281–383.) As noted above, this Court is precluded from considering such evidence when adjudicating the claimant's appeal of the ALJ's determination. *See Bass*, 499 F.3d at 512–13 (6th Cir. 2007).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it to the ALJ,[3] the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if

---

[3]The Commissioner makes a compelling argument that in instances where, as here, the proposed evidence was not presented either to the ALJ or to the Appeals Council, the relevant inquiry for good cause should extend through the Appeals Council's review. (PageID.399–403.) The Court need not decide this point, as it finds Plaintiff has failed to satisfy her burden of demonstrating the additional evidence is material.

presented with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Much of the record submitted by Plaintiff is not chronologically material. Many, if not most, of the notes were completed several months after the ALJ's decision, and reflect Plaintiff's condition as it existed at that time, with no reference to the relevant time period. "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). Accordingly the records dating after the ALJ's decision are not material. To the extent Plaintiff argues those records show evidence of a worsened condition, the proper remedy is with the filing of a new application.

The records relating to the relevant time period are also not material. The additional evidence begins with Plaintiff's initial evaluation at CMH. This note largely summarizes Plaintiff's stressors that are already a part of the record. It noted, for example, that Plaintiff's depression was due, in part, to being assaulted by her son as well as her daughter's worsening health. (PageID.351.) Notably, Plaintiff reported attempting to return to part-time work, but left not because of any difficulty she had, but because her daughter "couldn't handle" Plaintiff being away from home. (PageID.351.) Plaintiff was living with her daughter at her grandmother's residence, but it was a stressful situation. (PageID.351.) Plaintiff was diagnosed with major depressive disorder and PTSD, and a treatment plan was established.

Subsequent notes demonstrate that Plaintiff appeared depressed, anxious, exhausted, and overwhelmed. She experienced nightmares because of her son. (PageID.282–284, 289, 294.)

Plaintiff left her grandmother's house and moved into a shelter. Her therapist put Plaintiff in touch with support services, but Plaintiff was able to find an apartment on her own. (PageID.288.) In late August 2013, Plaintiff reported being exhausted, and her concentration was "all over the place." She felt physically better, however, and was looking forward to beginning home schooling. She was assigned a GAF of 50-55. (PageID.373–374.) In October 2013, Plaintiff reported decreased sleep, appetite, interest, and energy. She reported feeling worse over the past few weeks and didn't feel like leaving the house. She had canceled several therapy appointments. (PageID.296, 371.) Plaintiff was placed on new medication, to which she had a positive response. On October 30, 2013, Plaintiff still reported being depressed, anxious, and overwhelmed, but she found her new medication helped her with motivation and energy, and reduced her depression. (PageID.298.) On November 6, 2013, Plaintiff was reported as being less depressed, but by November 20, 2013, she reported feeling worse, although she was not taking her medication as prescribed. (PageID.299, 301.)

       None of this evidence supports a reasonable possibility that, had the ALJ considered it, he would have reached a different conclusion. The treatment notes document Plaintiff's depression and sense of being overwhelmed, but her condition was thoroughly discussed by the ALJ. Moreover these records show that despite her depression, Plaintiff was able to find housing on her own. She had tried to return to part time work and left, not because of her depression, but because of her daughter's needs. The Court recognizes the difficult circumstances Plaintiff has experienced and does not doubt that they have had a negative impact on her emotional health. The Court finds, however, the ALJ properly considered these issues in his decision, and no reasonable possibility exists that the ALJ would have come to a different result had he considered the additional evidence. Plaintiff's request for a remand under sentence six is accordingly rejected.

## **CONCLUSION**

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated:     August 26, 2016              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE